**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jun 29, 2018
OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| GLEN E. IVORY<br>Plaintiff,<br><br>vs.<br><br>RYAN D. MCCARTHY, SECRETARY OF THE ARMY, UNITED STATES DEPARTMENT OF THE ARMY, UNITED STATES ARMY CORPS OF ENGINEERS, MILLWOOD TRI-LAKES PROJECT<br>Defendant. | CASE NO. 18-4104<br>JURY DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Glen E. Ivory, by and through his attorneys, and for his Complaint against Defendants, Ryan D. McCarthy, Secretary of the Army, the United States Department of the Army (hereinafter "Army"), and the United States Army Corps of Engineers, Millwood Tri-Lakes Project, states as follows:

### I. PARTIES

1. Plaintiff, Glen E. Ivory, is an African-American individual whose primary residence is located at 145 Little River #23, Ashdown, Arkansas 71822. He was born on March 4, 1961, and he was 54 years old when he was initially subjected to discriminatory conduct.

2. At all relevant times, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 621, *et seq.*, 42 U.S.C. § 2000e(f), and the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101, *et seq.*

3. Defendant Ryan D. McCarthy is the current Secretary of the United States Department of the Army. The U.S. Army Corps of Engineers, Millwood Tri-Lakes Project, is an agency of the Department of the Army of the United States under the jurisdiction and control of

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                                                                             1

the Defendant McCarthy and the United States Department of the Army. Millwood Tri-Lakes Project is the only facility of the Department of the Army of the United States involved in this lawsuit. Defendant Millwood Tri-Lakes Project is an agent and/or agency of the United States Government within the meaning of 42 U.S.C. § 2000e-16.

4. At all relevant times, Defendant was an "employer" engaged in an industry affecting interstate commerce within the meaning of 24 U.S.C. § 630, 24 U.S.C. § 633a, and 42 U.S.C. § 2000e-16, 42 U.S.C. § 2000e(b).

## II. JURISDICTION

5. Plaintiff brings this action to redress racial and age employment discrimination based on violations of the Federal Age Discrimination in Employment Act, codified at 29 U.S.C. § 621, *et seq.* ("ADEA"), and Title VII, codified at 42 U.S.C. § 2000e, *et seq.*

6. This Court has jurisdiction over the parties and the subject matter of this action pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States;

   b. 28 U.S.C. § 1343(a)(3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

   c. 42 U.S.C. § 2000e-5(f)(3), which gives the right to bring a civil action for violations of Title VII; and,

   d. 29 U.S.C. § 626, which gives the right to bring a civil action for violations of the ADEA.

### III. VENUE

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

### IV. CONDITIONS PRECEDENT

8. Plaintiff has fulfilled all conditions precedent to the institution of this action. Plaintiff filed a Formal Complaint of Discrimination against his employer, the Department of the Army, on March 21, 2017. An Investigation Report was issued on October 4, 2017. Plaintiff submitted a timely appeal to the Equal Employment Opportunity Commission ("EEOC") requesting an administrative law judge on November 3, 2017. On April 20, 2018, Plaintiff notified the EEOC and the Department of the Army that since no action had been taken by the EEOC, including no administrative law judge assigned to the matter, he would be filing a Complaint in federal court. Thereafter, the EEOC administrative law judge issued an Order of Dismissal.

### V. FACTS

9. Mr. Ivory began working for Millwood Tri-Lakes District as a Seasonal Maintenance Worker Helper during the summers of 2015 and 2016. This position was part time. Mr. Ivory served our country, and he was hired by Defendant under veteran status.

10. Mr. Ivory was never disciplined, counseled, warned, or reprimanded while employed by Defendant.

11. Tony Porter serves as the Deputy Operation Project Manager at Millwood Tri-Lakes Project. Frankie Johnson was the District Maintenance Supervisor at the Tri-Lakes Project.

12. In 2015, a GS-7 position became available. James Green (Caucasian) applied for the position, but he did not meet the deadline to apply. Tony Porter made a telephone call on Green's behalf, and Green was ultimately hired. Three weeks later, Mr. Ivory timely applied for an open GS-7 position. Porter told Mr. Ivory that what was done for Green - i.e., making telephone calls to recommend and influence Green being selected for the position - could not be done for Mr. Ivory.

13. While Mr. Ivory was working during the summer of 2016 in the temporary position, Frankie Johnson excluded Mr. Ivory from planning meetings throughout the day. As Mr. Ivory was preparing the equipment and tools, Mr. Johnson would talk with the other members of the crew about the work that needed to be completed. When Mr. Ivory approached the crew, everyone would stop talking and disperse, as if Mr. Ivory should not hear the discussion or know what was happening. These actions ostracized Mr. Ivory, the only African-American employee.

14. Mr. Johnson assigned Mr. Ivory most, if not all, of the "dirty" jobs. While Mr. Ivory was at the Millwood Tri-Lakes Project, he was the only individual assigned "dirty" tasks. These tasks included, but were not limited to, the following: weed eating the levy side of the dam; removing urinals from bath houses; removing deer carcasses from the roadway; cleaning up the shop; picking up trash in front of the office on Highway 32; and replacing toilet seats.

15. The maintenance workers used hearing protection because of the loud, continuous noises made by the machinery. Mr. Ivory had to use a specific type of ear protection. While Mr. Johnson obtained the correct type of hearing protection, he kept it away from Mr. Ivory. Everyone else had easy access to the protective equipment they used, but Mr. Ivory had to continually request the hearing protection when he needed it. When Mr. Ivory asked for the hearing protection, Mr.

Johnson refused and told Mr. Ivory to reuse his old hearing protection. Mr. Ivory was forced to explain that reusing the old hearing protection caused him to develop ear infections. It was only then that Mr. Johnson retrieved some unused ear protection for Mr. Ivory. Mr. Johnson acted the same way toward Mr. Ivory regarding work gloves. These events humiliated, demeaned, and embarrassed Mr. Ivory.

16. At Mr. Johnson's request, Mr. Ivory identified specific equipment parts and supplies that were needed, such as shovel handles, shop heaters, and a limb chipper. Johnson ridiculed Mr. Ivory for including certain items on the list. Specifically, Mr. Johnson laughed at and demeaned Mr. Ivory in front of other employees. However, Johnson ordered equipment that other employees requested without question, including the limb chippers and the shop heaters, which were installed. When Mr. Ivory was confronted by Steve Spicer about repair parts for the zero turn lawn tractor, Mr. Ivory explained that it was due to Mr. Johnson's refusal to order them. Spicer then confronted Johnson about the parts. This event occurred prior to the selection of the Permanent Seasonal Maintenance Worker Helper positions, which placed Mr. Johnson in even greater tension and hostility with Mr. Ivory. After Mr. Johnson consulted with James Green and Dylan Bell, two other crew members, the working environment became extremely hostile for Mr. Ivory. Johnson then approached Mr. Ivory in a very aggressive manner. Mr. Johnson's actions were very threatening to Mr. Ivory both mentally and emotionally.

17. Mr. Johnson scheduled equipment training from October 23-29, 2016. Mr. Ivory requested to attend this training, which Mr. Johnson summarily denied. Due to the selection of the Caucasian trainees, Mr. Johnson prevented Mr. Ivory from attending and becoming certified on the equipment.

18. Mr. Johnson strictly enforced a thirty-minute lunch rule for Mr. Ivory. However, he allowed other employees to spend more than an hour at lunch, including James Green, Dylan Bell, and Tyrone Byrd (all Caucasian).

19. In 2016, Mr. Ivory applied for the GS5 permanent position - Permanent Seasonal Maintenance Worker.

20. Mr. Johnson chose a selection panel for the hiring process. All of the selection panel members for the Permanent Seasonal Maintenance Worker Helper positions were Caucasian.

21. The panel included Mr. James Green, Caucasian, despite a clear conflict of interest between Mr. Green and Mr. Dylan Bell, a selectee. The families of James Green and Dylan Bell own adjoining property, and they socialized together after work and on weekends, at those locations.

22. Mr. Green issued a biased rating favoring Dylan Bell (score of 85) compared to Mr. Ivory (score of 75). The panel used pre-determined ranking criteria to score the resumes of the applications, meaning no difference should have occurred in the scores without some other influence by a panel member. Mr. Ivory was hired three weeks prior to Mr. Dylan Bell.

23. The panel did not give Mr. Ivory's military service any deference in the hiring process, as it did for other veterans hired for other positions, such as Phillip Butler and Tyrone Byrd, both Caucasian.

24. All of the selections made by the panel for the Permanent Maintenance Worker Helper positions were Caucasian – Mr. Dylan Bell; Mr. Tyrone Byrd, and Ms. Ramona Briggs (later, Mr. Phillip Butler). All of the initial selections made by the panel for the Permanent Worker Helper positions were younger than Mr. Ivory.

25. Mr. Ivory was a veteran with a college degree who had performed the exact job responsibilities with no disciplines for two years/summers of a WG5 position - Maintenance Worker Helper.

26. Nevertheless, Defendant hired Dylan Bell to fill the temporary permanent GS5 position. Bell is a 24-year old Caucasian male with less experience than Mr. Ivory. Neither Bell nor Phillip Butler were veterans but were both selected. Mr. Ivory was hired three weeks prior to Mr. Bell being hired at Millwood's Tri-Lakes Project.

27. Defendant's management would often cancel job openings until it found the individual it wanted for the position, or until that individual met the qualifications. It would then reopen the position. Management cancelled the GS5 Permanent Seasonal Maintenance Worker Helper position twice before it finally went through because management wanted Dylan Bell in the position. Plaintiff applied for the position all three times. Dylan Bell's resume was written by Tony Porter, Deputy Operation Project Manager at Millwood Tri-Lakes Project.

28. Millwood Tri-Lakes District does not employ any African-American individuals, permanent or temporary.

## VI. CAUSES OF ACTION

### COUNT I
### RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC 2000e et seq.

29. Plaintiff restates and incorporates by reference the preceding paragraphs of this Complaint as if set forth herein.

30. Plaintiff belongs to a protected class under Title VII as an African-American male.

31. Plaintiff applied for a GS5 permanent position - Permanent Seasonal Maintenance Worker. He was qualified to perform this job. Mr. Ivory is a veteran with a college degree who

had performed the exact job responsibilities for two years/summers of a WG5 position Maintenance Worker Helper.

32. Defendant rejected Plaintiff despite his qualifications.

33. Defendant sought applications from others. Defendant hired Dylan Bell to fill the temporary permanent GS5 position. Bell is a 24-year old Caucasian male with less experience than Mr. Ivory. Bell also was not a veteran.

34. As a direct and proximate cause of the Defendant's acts or omissions, Plaintiff suffered and will continue to suffer severe mental and emotional distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life, loss of reputation, and lost wages and/or lost fringe benefits, past and future, which would not otherwise have been incurred.

35. Defendant's unlawful employment practices and actions complained of above were intentional, willful, and done with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

## COUNT II
## AGE DISCRIMINATION IN VIOLATION OF THE FEDERAL AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 USC 621 et seq.

36. Plaintiff restates and incorporates by reference the preceding paragraphs of this Complaint as if set forth herein.

37. At the time of the incidents, Plaintiff was above the age of forty (40).

38. Plaintiff suffered an adverse employment action. Defendant refused to hire him for the GS5 permanent position for which Plaintiff was qualified to perform.

39. Plaintiff was never disciplined, counseled, warned, or reprimanded while employed by Defendant. He was qualified and had performed exact job responsibilities for two

years/summers of a WG5 position Maintenance Worker Helper. Plaintiff met all of Defendant's legitimate expectations at the time of the hiring process.

40. Defendant hired Dylan Bell, an individual substantially younger than Plaintiff to fill the position. Mr. Byrd was 24-years old at the time Defendant hired him.

41. As a direct and proximate cause of the Defendant's acts or omissions, Plaintiff suffered and will continue to suffer severe lost wages and/or lost fringe benefits, past and future, which would not otherwise have been incurred.

42. Defendant's unlawful employment practices and actions complained of above were intentional, willful, and done with malice and/or reckless indifference to the federally protected rights of the Plaintiff. Accordingly, Plaintiff seeks liquidated damages available under the ADEA.

## COUNT III
## RACIAL DISCRIMINATION IN VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT

43. Plaintiff restates and incorporates by reference the preceding paragraphs of this Complaint as if set forth herein.

44. Plaintiff was an employee for Defendant at all relevant times.

45. Defendant qualifies as an employer under the Arkansas Civil Rights Act because it employed nine (9) or more employees in the State of Arkansas in each of twenty (20) or more calendar weeks in 2015 and 2016.

46. Defendant discriminated against Plaintiff by refusing to hire him based on his race in violation of the Arkansas Civil Rights Act. Ark. Code Ann. § 16-123-107. Such actions were not based on legitimate, non-discriminatory factors or reasons.

47. Plaintiff applied for GS5 permanent position - Permanent Seasonal Maintenance Worker. He was qualified to perform this job. Mr. Ivory was a veteran with a college degree who

had performed the exact job responsibilities for two years/summers of a WG5 position Maintenance Worker Helper.

48. Defendant rejected Plaintiff despite his qualifications.

49. Defendant sought applications from others. Defendant hired Dylan Bell to fill the temporary permanent GS5 position. Bell is a 24-year old Caucasian male with less experience than Mr. Ivory. Bell also was not a veteran.

50. As a direct and proximate cause of the Defendant's acts or omissions, Plaintiff suffered and will continue to suffer severe mental and emotional distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life, loss of reputation, and lost wages and/or lost fringe benefits, past and future, which would not otherwise have been incurred.

51. Defendant's unlawful employment practices and actions complained of above were intentional, willful, and done with malice and/or reckless indifference to the protected rights of the Plaintiff.

### COUNT IV
### HARASSMENT MOTIVATED BY RACIAL ANIMOSITY IN VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT

52. Plaintiff restates and incorporates by reference the preceding paragraphs of this Complaint as if set forth herein.

53. As shown by the facts above, Defendant harassed Plaintiff due to his race in violation of Arkansas Civil Rights Act § 16-123-106.

54. Defendant maintained special rules only for Plaintiff. Defendant required ear protection and gloves to be issued out to Plaintiff, which was not required of any other employee. Mr. Johnson would often hide the work gloves from Plaintiff. Defendant strictly enforced a thirty-minute lunch rule for Plaintiff, but other employees were allowed to take extended lunch periods.

55. Defendant forbade Plaintiff from attending equipment training, even though other similarly situated employees were allowed to attend.

56. Defendant demeaned and belittled Plaintiff in front of his coworkers.

57. Defendant gave only Plaintiff the "dirty" jobs associated with this position. While Mr. Ivory was at the Millwood Tri-Lakes Project, he was the only individual assigned "dirty" tasks. These tasks included, but were not limited to, the following: weed eating the levy side of the dam; removing urinals from bath houses; removing deer carcasses from the roadway; cleaning up the shop; picking up trash in front of the office on Highway 32; and replacing toilet seats.

58. Defendant excluded Mr. Ivory from planning meetings throughout the day. As Mr. Ivory was preparing the equipment and tools, Mr. Johnson would talk with the other members of the crew about what work needed to be completed. When Mr. Ivory approached, everyone would stop talking and disperse, as if Mr. Ivory should not hear the discussion or know what was happening. Mr. Tyrone Byrd was upset with this practice as he noticed how it would take place in the work area.

59. Defendant's actions toward the Plaintiff were willful and intentional.

60. As a direct and proximate cause of the Defendant's acts or omissions, Plaintiff has been and continues to be damaged and suffer losses including, but not limited to, severe mental and emotional distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life, loss of reputation, and lost wages and/or fringe benefits, past and future, which would not otherwise have been incurred.

## VII. DAMAGES

61. Plaintiff restates and incorporates by reference the preceding paragraphs of this Complaint as if set forth herein.

62. As a direct and proximate result of the Defendant's actions described above, Plaintiff suffered injuries which would not have otherwise occurred. Plaintiff pleads for all damages available under federal law, Arkansas state law, and equity, and prays this Court:

- Award Plaintiff all compensatory damages available;
- Award Plaintiff all liquidated damages available;
- Award Plaintiff equitable relief of back salary and fringe benefits and/or front salary and benefits;
- Award Plaintiff all damages for mental anguish and extreme emotional distress;
- Award Plaintiff all damages for loss of reputation;
- Award Plaintiff pre- and post-judgment interest;
- Award Plaintiff costs and attorney's fees;
- Grant such other relief as it may deem just and proper.

## VIII. JURY DEMAND

63. Plaintiff asserts his rights under the Seventh Amendment to the United States Constitution, and pursuant to Fed. R. Civ. P. 38, demands a trial by jury on all issues.

## IX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited in terms of law to appear and answer; that upon final trial and hearing, Plaintiff be awarded judgment against the Defendants for damages to be determined at trial; attorney's fees; pre and post-judgment interest; all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which Plaintiff may show himself entitled.

Respectfully submitted,

*[signature]*

**LOUISE TAUSCH**
Arkansas Bar No. 86212
Texas State Bar No. 19680600
Email: ltausch@arwhlaw.com

**BRANDON COGBURN**
Arkansas State Bar No. 02094
Texas State Bar No. 24038827

**ATCHLEY, RUSSELL, WALDROP & HLAVINKA, LLP**
1710 Moores Lane
Texarkana, Texas 75503
Tel 903-792-8246
Fax 903-792-5801

**ATTORNEYS FOR PLAINTIFF, GLEN E. IVORY**